I'm here for RSUI. I'm here with Jesse Mondry, who did the lion's share of the briefing here. So if you disagree with any of it, there he is. This bill works that way. The guy who does the briefing doesn't get to make the argument, huh? Sometimes. This appeal raises numerous issues, and I want to discuss only a few of them this morning and will rely on the briefing, which, in all seriousness, I think is quite capable. Just to be clear, RSUI is a third-level insurer and a second-level excess carrier for New Horizon. In this case, RSUI did exactly what Minnesota law requires an excess carrier who has coverage concerns to do. It sent a reservation of rights letter when it became clear that its coverage might possibly be involved in the case and commenced a declaratory judgment action when the tort claims, the underlying case, was resolved. Clemens v. Wilcox is a 1986 case of the Minnesota Supreme Court. At that point, they described their longstanding policy of encouraging resolution of insurance coverage disputes in a separate declaratory judgment action. That was what was done. I understand your argument as to the significance of the duty to defend and the fact that RSUI was not in control of the defense. Correct. Looking at the passage in the remodeling, which says that an insurer has a duty to defend, has a duty to inform the insured of the insured's interest in obtaining an allocated award, and the insured is entitled to make the decision whether to seek an allocated award, doesn't that raise a notice issue here given RSUI's involvement, particularly in the second trial? What does the summary judgment record show as to interchanges between RSUI and the insured about whether the insured's duty to secure an allocation and how that would be done? That was between Travelers and New Horizons. Where the duty to defend was. Yes. But your client was there, and your client was very aware of the potential allocation problem. And why doesn't remodeling create a related duty on an excess insurer in this situation? In this situation, RSUI had no right to raise coverage issues in that tort case. This is not in the case. This would have to be a special interaction. Oh, I. Well, there. The letter in remodeling thinks, seems, posits, probably assumes logically that this would be done by letters typically, but it could be done anyway. The Reservation of Rights letter clearly puts them on notice that RSUI is and may assert the coverage defense related to sexual actions or sexual acts. And the record that the court fairly asks about reflects that RSUI was present in some parts for the second trial, a jury selection process. RSUI was asked if it would agree its view on the stipulation of liability for the purpose of avoiding evidence about the sexual nature of the assaults. Well, did RSUI have any obligation to ask the insured to take steps in the underlying case to get an allocation? No, because any of the cases that say talk about that, talk about it for the company or the insurer that's defending the case that has the. Well, I know that's how they've come up, but there is no case involving an excess insurer like this. So we have to decide what Minnesota likely would do in this scenario. And I understand RSUI couldn't compel anything. It didn't have the control, but did it have an obligation to say you ought to go back and get a special interrogatory after the general verdict or something like that? And then if they refused to do it, you're in a position to say they had their chance. But what about that? Or alternatively to say, you know, if you don't get a determination in the underlying case, it will be your burden to prove and we think there's a legitimate issue as to covered and uncovered claims. It will be your burden under remodeling or the prior case law to allocate. I agree that there's no case that imposes that duty on an excess carrier that's not defending. And I don't think it fits because if we had gone, it's not just. I think it could be controlling of the question on if there is a remand, who will have the burden on the remand? Yes. And if there's a remand, I think it's clear under the cases we cite in the brief that that duty shifts. And the UnitedHealthcare case is a good example only because of the duty to defend. And you just can't take monitoring activities and observation of two days of trial and convert that to a duty to defend. Travelers was defending the case, had the obligation contractually to defend the case until it had paid off its entire limits. But RSUI had the right to participate, right? We had the right to participate or observe. And we cooperated with Travelers Defense Council. But that cannot be converted to be, certainly in the insurance world, the duty to defend or defending the case. We were not. We didn't hire the Defense Council. Well, you just say since an excess insurer almost never has the duty to defend, therefore excess insurer is completely free of any need to work through with the insured in a timely manner how any allocation issues should be resolved. You can just sit there and lay in the weeds and then take this position. The excess carrier could have done nothing. Yes, that's true. And the things that... Well, I'm not sure that's true. Well, it is under the... Didn't do nothing in any event. It is under the language of the policy. But let me explain why it isn't just a question of allocating the verdict. RSUI has the right to put in its proof about the sexual nature of the assault. And that was directly contrary to New Horizons' interests in this case. It didn't want to do that. It went to extraordinary lengths to avoid it. It brought a motion in limine to keep that evidence out. It stipulated liability. Do I understand you to say RSUI had a right to put that evidence in in the underlying case? No, not in the underlying case. That's exactly right. You mean the record wasn't fully developed, you don't think, on this question? No. And so you think you have a right in this case to put it on? That's what Minnesota law says. That's the main appeal issue, of course, which we skipped right over. You let the tort case proceed without attention to insurance coverage issues. Minnesota is not a direct action state. Minnesota does not say that. I quoted the longstanding policy in Minnesota. Let the case proceed, reserve rights, bring a declaratory judgment action for our coverage action. That's what they did. That's not to say that, leaving aside the presence of an excess, that's not to say the insured and the insurer, jointly defending the insured and the underlying case, can't take steps to resolve coverage questions by interrogatories or otherwise without putting coverage into play, so to speak, before the jury. What would that do, though, to have a coverage-like determination that wasn't made on the record of things that are germane to the coverage question? If you were going to do it, you'd have to put evidence in. I would guess typically insurers and insureds jointly fighting off the third party would not want to do this, but they can. Right. They can structure the evidence. But here I think RSU High was essentially ethically constrained not to be putting in evidence that it would have a very clear potential of increasing damages in the case. It didn't have any authority. It wasn't a party. Right. But Judge Magnuson takes us to task for not doing that, and by the time we get to the declaratory judgment action, he won't even hear the evidence or consider the evidence of the sexual nature of the attack that was in the record. But why would you be allowed to supplement the record? Why would that be relevant to what the original verdict was based on? The question under the policy is what is did the whether the liability arose from, isn't that it? Out of actual or threatened sexual abuse. But isn't that going to be limited to what was the evidence in the tort case? That's what the liability. How can the liability arise out of something that wasn't presented in the original tort case? Because the parties in the tort case may not have been interested in having that in front of the tort jury. I know they weren't interested in that, but I'm just saying isn't by definition, doesn't the liability arise out of whatever was the evidence that led a jury to impose liability? No, it could arise out of other circumstances. And in this court, in the UnitedHealth case, specifically recognized that coverage determinations are not based solely on evidence from the first trial. I mean, and that's consistent that we have a right to litigate additional issues, offer additional evidence, call witnesses, experts. And that's what we were deprived here by summary judgment. Would that not expand the term of liability to follow up on Judge Colleton's question? You've got the admission of liability and then you went to the jury, or they went to the jury for damages, but you're still talking about the liability that was then represented by the damages that the jury returned. So you're looking at presenting evidence for additional liability? We're looking to allocate the liability and New Horizon has, in our view, the absolute responsibility to adjudicate that. That also sort of pushes up against you're getting into a jury verdict, which is what we typically do not do. Wouldn't that be trying to break down what the jury did without having the jury there to tell you what it did? In Minnesota law, I don't know how to be clearer about this, the court says, and there are reasons why it can't come up in the tort case without polluting, if you will, the underlying tort case. Well, it seems to me that the Howe case is a good way to come at this because Minnesota lawyers call it a Miller-Sugar settlement, but in most states the insured and the third party can settle a case  Now, there, Howe recognized, it seems to me, that's not surprising, absolutely, the coverage defense is preserved. Yes. And the settlement, of course, has to be reasonable, and the third party has to prove coverage. Third party plaintiff now in the shoes of the insured proves coverage. So you are looking behind a settlement. But those are predicated on... And in the arbitration case, you're going to look behind the arbitration award, accept the rules of the arbitration association, encourage everybody to get the arbitrator to explain so the job is done for them. Now, why, since the liability determination in those two situations can be examined in a separate coverage proceeding, it seems to me the issue here is why not when the case goes to trial and there is no determination in the underlying trial that resolves the coverage questions. And if those are not meaningfully distinguishable, then it seems to me you prevail. If there is some reason, I mean, of course, the district court sort of graphically said jury findings are sacrosanct, which is true as far as it goes, and the question is how far does it go? It's clear to me you wouldn't be bringing the jurors in, for example, on the later trial, but you can bring in attorneys, you can bring in experts, and that's what all the cases, and we cite them in the brief. Say, Miller v. Shugart generally, I don't know whether exclusively, is limited, though, to where someone does, an insurer, does deny coverage. And at that point, the parties... Probably denies duty to... I'm not sure whether the insured... I'm not sure you couldn't do one of those settlements even if the insured accepted the duty to defend. Well, I understand your right to ask hypothetical questions, but that's not this case. But you cite how you rely on how significantly. Yes, because it's a significant indicator as you identify the mission to figure out what the Minnesota Supreme Court would do. I mean, you'd be welcome to certify the question to the Minnesota Supreme Court, but I don't think you need to, because I think the Minnesota law is relatively clear. I see my primary time has passed. I'll save the rest for rebuttal. Thank you. Mr. DeRocher. Good morning, Your Honors. Skip DeRocher on behalf of New Horizon Kids Quest. The district court here followed burden-shifting procedures that are clearly established under Minnesota law, and it limited its holding to unique facts of this case, and the court should affirm. I'm going to cover three main points, and the last one I'm going to cover is the one that you've been mostly talking about, which is the allocation issue. I would urge the court that we don't need to get to the allocation issue here. This isn't UnitedHealth Group. This is not Remodeling Dimension. This is not a case where the insurance company has demonstrated that an exclusion has been triggered. Your linguistic argument in your brief is, to me, not persuasive at all. And as is pointed out, Haug admittedly did not a case, went to trial, but had exactly the same language. The liability was the liability established by the settlement there or by arbitration in what's that case? Remodeling was an arbitration case.  Well, I'll do respect, Your Honor. I do disagree. I think the Haug case, again, getting ahead of myself because I do want to talk just briefly and try and convince you why our linguistic argument is good, but Haug is a different case. Haug is a Miller-Sugar case. But this language is not at all unusual. The language that you say distinguishes this from all the other cases that go to trial, and then we have supplemental D.J. proceedings. I disagree that it isn't unusual. I think if Your Honors look at typical exclusions, many of them are triggered by things other than liability. And, in fact, in Haug, there were two exclusions. The first one was what I'd call a fact trigger, which is whether the harm was expected or intended. It wasn't whether there was liability for expected or intended harm. It was whether the harm was expected or intended. If so, there was no coverage. So it was appropriate for the court to look to the underlying record to determine in that case was the harm expected or intended. There was a second exclusion in Haug that was a liability-based exclusion, but the court never looked to the underlying record to determine if that was triggered because the court determined that exclusion covered all the causes of action alleged in Haug. And so it's concluded correctly if the defendant paid any money to settle those claims, then that exclusion was triggered and it covered all the damages. So Haug is, with all due respect, a completely different case than our case. Well, what about the language prevents the court from looking to the underlying record to see if liability arose from a certain cause? Because liability, as Your Honor knows, the definition is the legal obligation to pay damages. How was liability established in our case? By a jury verdict. It was by a jury verdict. But the settlement, it's a contractual obligation to pay. But the settlement agreement, you can look to the underlying record, as we saw in UnitedHealth Group, to determine what did the parties have to say at the time, how did they allocate, and they never. But the obligation, you just rested on the obligation to pay language. I don't see the difference. There's a difference between a jury finding a contractual obligation and a verdict obligation and an arbitration obligation. But the obligation arises out of one of those three. In a jury verdict, you'd have to determine what the jury's basis was. In a general verdict or even a special verdict here where it didn't allocate, you would have to look to what did the jurors decide? How did they reach the decision? I don't know. You're deciding based on the evidence presented. Were there covered claims and were there not covered claims? I do believe, Your Honor, if you look at exclusions, even if you look at the RSUI, other exclusions, the war exclusion, the terrorism exclusion, they use liability, and then they add on other words. There they say, you know, no coverage for terrorism, liability for terrorism, injuries for terrorism, damages for terrorism. They obviously understand there is a distinction between the word liability and exclusions where you're fact-based, like the first one was in Haug, or where you're claim-based. Some exclusions are claim-based. They say, we won't cover any claims of sexual abuse. So if we had a situation here where we had a claim-based exclusion, then RSUI could stand up and say, look at the underlying record. There were allegations in the underlying lawsuit of claims of sexual abuse, and they would have the opportunity to convince the court in the second DJ action that there was claims of sexual abuse. You could have a fact-based exclusion, an exclusion that said, this insurance does not cover, does not apply to sexual abuse or molestation. And there, just like in Haug, you could look to the underlying record to say, okay, in that case, was there, not asking what the jury decided, not liability, but asking, was there sexual abuse or molestation? That's a fact-based exclusion. The third type of exclusion that we're talking about here is a liability-based exclusion. That's the word. The liability is the word that RSUI chose for its exclusion. Remodeling Dimensions teaches us we have to look carefully at the plain language of the exclusion. And what word other than liability would be different? The word, you could just say, instead of saying, this does not cover liability, this exclusion applies to all liability for sexual abuse, you just say, this exclusion, this policy does not cover sexual abuse. In that case, then a second jury can say, well, okay, let's see. Was there sexual abuse in that underlying case? What case would have that contrary? What case should we look at for this contrast? Well, I would say it this way. They have not shown one case where a jury verdict. I asked you a question. What case, if you say, I haven't found one, but I can read, the reasoning is fine, that's what we do all the time. The number of cases that we've cited, the Butterfield case, the Herrera case, the Duke case, there's a number of cases that say when you have a general jury verdict, general form verdict. No, I want a case with contrasting, with policy language that makes the contrast your argument. Okay. Well, I have not found that case, nor have they. The two cases they've cited you, Milbank and Haug, do not stand for the proposition that they cite it for. And the policy language has to count for something. Remodeling dimension teaches us that. And, in fact, remodeling dimension, if you look at what remodeling dimension says, and this is at page 617, I think this proves the point. It says, determine whether the parties have met their respective burdens. And this means, has RSUI met its burden to prove that an exclusion was triggered? The court examines the language of the particular policy and the claim or claims actually proven by the third-party claimant in the liability action. How do you determine if the claim was actually proven by the third-party claimant in the underlying action, other than to look to see what the jury concluded? Well, in that case, though, the arbitrator didn't specify, as I recall. And so the court did allow for proof about what the arbitrator likely was facing his decision on. Here's how I read remodeling dimensions on that. The arbitrator in that case found there was damages for some covered claims and some uncovered claims. And the court said- Well, the arbitrator just gave an award. I don't believe so. It was a blanket award that didn't break it out by the claims. With all due respect, Your Honor, I think that the arbitrator, it didn't allocate. It didn't say, here's how much for the covered, here's how much for the uncovered. But I believe remodeling dimensions did, the arbitration award, did specify that there was liability for, there was an original house and an addition work that was done. Well, I don't know. There was an award for basic house repairs, final cleaning, construction management fees, nothing for replacement window costs, inspection costs, and design costs. And the house repair included original house repair and the work on the addition, and those were covered and not covered. And it was undisputed that those were covered and not covered. So in that case, I didn't get a chance to explain, they got to step three. They got to the point where there was already an agreement that there were covered and uncovered claims in that arbitration award. Same with UHG. There was no question in UHG that there were covered and uncovered claims. There was an ERISA action and an antitrust action. And the ERISA claims were not covered, and the antitrust were, and the settlement was for those two things. There was no question that there were covered and uncovered damages. Here, there has been no proof that any part of that $6 million jury verdict has any element of sexual abuse or molestation. Absolutely not one iota of proof. You say the excess insurer is just out of luck. Well, they draft the policy if they make it a liability base. So you want it to be a claim. So it's going to be a broader exclusion if they adopt your rule because they're not going to be able to limit it to liability because they have no way ever to get a decision on that. No, here's what I would say. One thing they can do is choose to take liability out and make it a claim-based or a... Be a broader exclusion, and you're going to have less coverage, people like your client. If they choose to do that, if they choose to take that word out and change it, then they... Well, why wouldn't they? I mean, if they have no way ever to get a decision on whether the liability exclusion applies... They do have another way, though. What's the other way? The other way is to do sort of what RSUI did here, except they don't lay in the weeds. If they participate, as Your Honor pointed out... No, they couldn't participate here. I was going to ask, give me a case. You say, as I summarize the briefs, many courts have held that it must be an express jury finding, a finding solved by cases. Which of those cases involve an insurer that did not have the duty to defend? Two of them. Camden-Clark, which is cited by Remodeling Dimensions, says that there can be instances where the insurance company has the right to participate, but then doesn't do anything. So that's Camden-Clark. But that sounds like DICTA. It probably was DICTA. All right, well, I want a holding where the insurer that did not have the duty to defend... Pharmacists. Pardon? Pharmacists Mutual in Vermont on 993A 2nd 413. And there, the facts are very similar to our facts. RSUI had the contractual right to participate. It exercised that right. It attended a mediation. It was aware. And, by the way, it was a third-level access. It knew before the first trial that there was a $15 million demand. So it knew that there was a possibility of impacting its limits. It did nothing before the first trial. Second trial, it got heavy into defense. Did it take on the duty to defend? Pharmacists, or you're talking this case? Oh, no, I'm talking about this case. Pharmacists, I believe, it's a very similar situation where the insurance company participated, just like RSUI. Or excess. I can't recall whether it was or not, Your Honor. I think it may have been excess, but I can't recall that. And so, in this case, RSUI not only participated, it hired its own jury consultant. It participated in jury selection. And it had the opportunity. There was no need to insert coverage decisions into the underlying action. As Your Honor pointed out, what it does, what Remodeling Dimensions does, is it says, if there's an issue like this, if you know that allocations can become an issue, a reservation rights letter is not enough. You've got to actually notify the insured of its interest in getting an allocation. And what does Remodeling say is the consequence if you don't notify them? The burden of allocation falls on the insurer. Right. Right. But they were still allowed then to put on a case in a collateral proceeding about allocation. Because they got to step three. They got to the allocation step. My point here is that the insurance company has never demonstrated that its exclusion has been triggered. It has not done so. And it can't do so because it has to prove that the liability was triggered by sexual abuse. It's language, liability, it's exclusion. It's going to be narrowly construed and any ambiguities construed against it under Minnesota law. How would writing the letters then during the case do any good? Your incentive would be never to ask for the interrogatories because you will win if there is no interrogatory. One of two things happens. Either the insured agrees. And in some instances, maybe they would. You get the verdict and then you ask the interrogatories. You have no incentive to ask for the interrogatories because it can only trigger the exclusion. Okay. Okay. So in that case, then the insurance company can argue a stoppage. It's the reverse of remodeling dimensions. All right. So you do agree with that. If they had asked you to get the interrogatories and you had declined or refused, you think you might be stopped from disputing the exclusion. I think that that would be the reverse of remodeling dimensions. And I think that would be a way. So either they ask and the insured agrees. And maybe in some instances it would. Well, they would if there was an estoppel rule. And if they would agree, then we're not standing here today. And if they don't agree, then the insurance company can say, how can we ever prove ourselves? They could still do it by taking the word liability out of their exclusion, in my view. But if they choose to keep the word liability and they say, how could we ever? Well, they could argue that they were prevented from doing so. Well, estoppel is only one possible outcome. The other is the DJ suit gets to serve the issue up to a district court. It's remodeling contemplates. And I was trying to stress the point that the facts here are very unique. In many, many cases, you would be able to look to the underlying. Even probably where there's a liability-based trigger, you could still look to the underlying record to see if from that underlying record. Assume that. That's what the district court refused to examine. Okay. Well, he refused to examine because he believed, and I think correctly, that it would be speculation. Anything that they would present here in these particular facts would be speculation as to whether one cent of that jury verdict. Speculation is just a pejorative at the end of a spectrum. Well, in UHG, the court precluded the insured from presenting evidence because it was going to be speculative. Here, I think it's the flip side. I think the insurance company. Depends who has a burden. Well, and here the RSUI should have. It definitely has. But that's the should. And the district court didn't have to go there because it's a jury verdict. Except it definitely has, under Minnesota law, definitely has the burden of proving its exclusion in the first place. It has to show that the exclusion was triggered. Well, a prima facie case, I think some of the remodeling. Not indemnification. And this is for indemnification, not a duty to defend. That page 617 of Remodeling Dimensions, look at the claims actually proved. Yes, but who does it? All right. We understand. Thank you. Conflicting positions. Your Honor, we respectfully request that you affirm the district court decision. Thank you. Rebuttal time. You've got a minute. One minute. Well, we've heard a lot of this, and it's been very thoroughly briefed. You know, we quote Haug in our case. We don't misstate it. I mean, it's not something we cite out of context. We quote the specific language. We tried, we would have had to decide our coverage defense with one or maybe both hands tied behind our backs under New Horizons' view of our rights with respect to our policy. They say we had to do it. Can you imagine if we had gone into Chief Judge Bernardson and said, Your Honor, you don't know us, but we're the third level excess carrier, and we'd like to cross-examine some of your witnesses because we have a coverage point to make. We'd like to add some special verdict interrogatories and probably some instructions about our policy language. Well, why should we? It would have left us out of court. Well, sure, but that's not the only way to go about it. I mean, what's wrong with the rule that says you need to ask the insured to get a special interrogatory after the general verdict that answers the question, did the liability arise from the sexual abuse or not? And then you get an interrogatory on that, and if the answer is yes, then the exclusion applies and you have an allocation issue that you can handle either there or in a separate proceeding. But what's wrong with that? This is in a case that the issues haven't been pled. We haven't appeared. We're not involved in trying the case. We're not defending it. We don't have the ability to come in. I mean, do we intervene in a novel intervention proceeding? Why do you need to be involved to get a decision where the jury just says whether or not they were imposing liability based on a sexual act? Well, I don't mean to speculate, God forbid, but I think that the judge wouldn't allow RSUI just to come in and ask the jury after they've decided the case to ask, well, we have a couple more questions for you. And we're entitled to have it made on evidence, not just a stray allocation question. The law is established in Minnesota. You can decide them in a declaratory judgment action after the tort case is decided. That's what we did. So these questions about why couldn't you do something else, why would you if you're not required to? And there's a well-established procedure of bring a declaratory judgment action. Well, the why would you, isn't the answer obvious? Because you can ask the actual jury. You don't have to predict what they decided on. Isn't that an obvious? You ought to ask that question then to the Minnesota Supreme Court. Do you want to establish a new procedure for dealing with coverage disputes where there are covered and uncovered claims? And I don't think it requires much speculation on the record in this case to say there was definitely some portion of these large verdicts related to the sexual assault of this three-and-a-half-year-old boy that had longstanding consequences after the event, testified to by the nurses and the emergency room doctor. Your time has long expired unless Judge Colleton has a question. No, thank you. Thank you very much, Your Honors. Thank you, Counsel. The case has been thoroughly briefed and well-argued and interesting, I think, rather novel issue, and we'll take all your advice. Please call the last case for argument. The next case is 18-17-70, Jessica Campschroer et al., Viannoka County et al.